IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C.  Atlanta

OCT 1 0 2006

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

EUGENE PHILLIPS by and through
his Guardian JUSTIN O'NEAL
TOOLE,

        Plaintiff,

v.

STATE OF GEORGIA, DEBORAH
YATES, LPN, and S. NUCKOLLS,
LPN,

        Defendants.

CIVIL ACTION
NO. 1:05-cv-02158-GET

O R D E R

The above-styled matter is presently before the court on:

1) Defendant State of Georgia's motion for summary judgment
[docket no. 18]; and

2) Plaintiff's motion for summary judgment [docket no. 20].

Plaintiff filed the instant action on August 18, 2005,
alleging violations of his Fourteenth Amendment rights, including
the right to medical treatment and the right to be free from
punishment and excessive force under 42 U.S.C. § 1983. Plaintiff
also brought claims under Article I, Section I, Paragraph XVII of
the Georgia Constitution, the Americans with Disabilities Act, the
Rehabilitation Act of 1973, and state tort law. On February 1,
2006, plaintiff and defendants Carroll County, Georgia, Sheriff
Terry Langley, Sergeant Matt Duffie, Michael Lynch, Misty Sims, and
Eddy Rivera filed a joint motion with this court seeking dismissal

with prejudice of defendants Carroll County, Georgia, Sheriff Terry Langley, Sergeant Matt Duffie, Michael Lynch, Misty Sims, and Eddy Rivera.   On February 2, 2006, this court granted the parties' motion dismissing the above-referenced defendants.

On March 17, 2006, plaintiff and defendant submitted joint stipulations to this court regarding the parties' motions for summary judgment.   On March 28, 2006, defendant filed its motion for summary judgment.  On April 6, 2006, plaintiff filed his motion for summary judgment.

Standard

Courts should grant summary judgment when "there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). The moving party must "always bear the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548 (1986).  That burden is "discharged by 'showing' - that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Id. at 325; see also U.S. v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991).

Page 2

Once the movant has met this burden, the opposing party must then present evidence establishing that there is a genuine issue of material fact. Celotex, 477 U.S. at 325. The nonmoving party must go beyond the pleadings and submit evidence such as affidavits, depositions and admissions that are sufficient to demonstrate that if allowed to proceed to trial, a jury might return a verdict in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S. Ct. 2505 (1986). If he does so, there is a genuine issue of fact that requires a trial. In making a determination of whether there is a material issue of fact, the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Id. at 255; Rollins v. TechSouth, Inc., 833 F.2d 1525, 1529 (11th Cir. 1987). However, an issue is not genuine if it is unsupported by evidence or if it is created by evidence that is "merely colorable" or is "not significantly probative." Anderson, 477 U.S. at 249-50. Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case. Id. at 248. Thus, to create a genuine issue of material fact for trial, the party opposing the summary judgment must come forward with specific evidence of every element essential to his case with respect to which (1) he has the burden of proof, and (2) the summary judgment movant has made a plausible showing of the absence of evidence of the necessary element. Celotex, 477 U.S. at 323.

Facts

In light of the foregoing standard, the court finds the following facts for the purpose of summary judgment only. The court relies on the parties' joint stipulations ("J.S."), filed on March 17, 2006. On August, 20, 2003, plaintiff was arrested by Carrollton County police and transported to the Carroll County Jail. J.S. ¶ 5. During his incarceration at the Carroll County Jail, plaintiff contends that "he was not allowed to use the telephone; that he was refused medical treatment; that he was placed in a full body and head restraint; and that his disability was not accommodated." J.S. ¶ 7.

Plaintiff originally sued the State of Georgia, Sheriff Terry Langley, in both his individual and official capacities, Sergeant Matt Duffie, Michael Lynch, Misty Sims, Eddy Rivera, Deborah Yates, LPN, S. Nuckolls, LPN, and Carroll County, Georgia. "All issues regarding Carroll County and Carroll County officials have been resolved." J.S. ¶ 8. The only claim plaintiff asserts against defendant State of Georgia is that the State violated the Rehabilitation Act of 1973, as amended. J.S. ¶ 9.

The parties both agree that the State of Georgia was not involved in the underlying facts that gave rise to plaintiff's action, and that the State had no supervisory control over employees or medical providers of the Sheriff's office. J.S. ¶ 10.

During the time period at issue, Carroll County received federal funds, as defined by the Rehabilitation Act, from the federal government.  J.S. ¶ 12.  "Carroll County did not receive any federal funds as defined by the Rehabilitation Act from the State of Georgia, or any Department or Agency of the State during the time period at issue."  J.S. ¶ 13.

<u>Discussion</u>

In his motion for summary judgment, plaintiff asserts that the actions of Carroll County Sheriff Terry Langley and his staff constitute a violation of the Rehabilitation Act, 29 U.S.C. § 794. Plaintiff relies on <u>Manders v. Lee</u>, 338 F.3d 1304 (11th Cir. 2003), for the proposition that the State of Georgia is liable under the Rehabilitation Act for the acts of Sheriff Langley because the sheriff was acting as an arm of the state when dealing with plaintiff.  Plaintiff further asserts that the state is liable for the acts of the other jail employees under the theory of respondeat superior.

In its response to plaintiff's motion for summary judgment and in its own motion for summary judgment, defendant disputes plaintiff's claim that Sheriff Langley acted as an arm of the state with regard to the treatment of plaintiff.  Defendant further asserts that, regardless of whether Sheriff Langley is found to have been acting as an arm of the state under <u>Manders</u>, liability

under the Rehabilitation Act does not attach to the State of Georgia because of this.  Specifically, defendant asserts that the Rehabilitation Act does not apply to the State of Georgia as a whole, and does not apply in the present case because federal funds were given directly to the Carroll County Sheriff's Department and were not given through the State of Georgia or one of its departments or agencies.

After reviewing both parties' motions for summary judgment, the court determines that it must first decide whether the State of Georgia, as a whole, can be held liable under the Rehabilitation Act, regardless of whether the state is liable for the actions of Sheriff Langley and his employees.  Section 504 of the Rehabilitation Act of 1973 prohibits discrimination against a qualified individual with a disability for "any program or activity" that receives federal financial assistance.  29 U.S.C. § 794(a).  The Act defines "program or activity" as all of the operations of:

> (1) (A) a department, agency, special purpose district, or other instrumentality of a State or of a local government; or
> (B) the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government; [or]
> ...
> (4) any other entity which is established by two or more of the entities described in paragraph (1), (2), or (3); any part of which is extended Federal financial assistance.

29 U.S.C. § 794(b).

Congress passed amendments to the Rehabilitation Act in 1986 in response to the Supreme Court's decision in <u>Atascadero State Hospital v. Scanlon</u>, 473 U.S. 234, 105 S. Ct. 3142 (1985). In <u>Atascadero</u>, the Supreme Court reviewed a court of appeals' interpretation of the Rehabilitation Act in which the lower court found that a state consented to suit in federal court under the Act by accepting federal funds, thereby waiving its Eleventh Amendment immunity. 473 U.S. at 246, 105 S. Ct. at 3149. The Supreme Court reversed the court of appeals and held that the Rehabilitation Act of 1973 fell "far short of expressing an unequivocal congressional intent to abrogate the States' Eleventh Amendment immunity." 473 U.S. at 247, 105 S. Ct. at 3150.

The Rehabilitation Act Amendments, adopted in 1986, effectively overruled the Supreme Court's decision in <u>Atascadero</u> and provide: "A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973." 42 U.S.C. § 2000d-7. After the 1986 amendments, "[t]he U.S. Supreme Court, as well as every circuit court to address the question, has recognized Section 2000d-7 as a valid and unambiguous waiver" of state sovereign immunity for the program or agency that receives the federal funds. <u>Nihiser</u>, 269 F.3d at 628 (citing <u>Lane v. Pena</u>, 518 U.S. 187, 200, 116 S. Ct. 2092 (1996);

Page 7

Jim C. v. United States, 235 F.3d 1079 (8th Cir. 2000) (en banc); Stanley v. Litscher, 213 F.3d 340 (7th Cir. 2000); Clark v. California, 123 F.3d 1267 (9th Cir. 1997)); see also Koslow, 302 F.3d at 170 (citing Pederson v. La. St. Univ., 213 F.3d 858, 875-76 (5th Cir. 2000); Sandoval v. Hagan, 197 F.3d 484, 493-94 (11th Cir. 1999), rev'd on other grounds, 532 U.S. 275, 121 S. Ct. 1511 (2001); Litman v. George Mason Univ., 186 F.3d 544, 554 (4th Cir. 1999)).

In addition to the amendments in 1986, Congress further amended the Rehabilitation Act in 1988 with the intention to overrule the Supreme Court's decision in Grove City College v. Bell, 465 U.S. 555, 104 S. Ct. 1211 (1984). In Grove City, the Supreme Court, adopting a narrow view of the phrase "program or activity," found that the phrase only applied to a *specific* program or activity of a state entity which received the federal funds. 465 U.S. at 591-92, 104 S. Ct. at 1231. With the 1988 amendment to the Rehabilitation Act, Congress sought to broaden the definition of "program or activity" and "[t]he statute, as amended in 1988, defines program or activity to mean 'all the operations' of a department, agency, district, or other instrumentality of state or local government that receives or dispenses federal financial assistance." Schroeder v. City of Chicago, 927 F.2d 957, 962 (7th Cir. 1991). Thus, after the 1988 amendment, *all* of the operations

of an entity liable under the Rehabilitation Act constitute a "program or activity" under the Act. Id.

Since Congress' amendments to the Rehabilitation Act in 1986 and 1988, courts have been faced with the task of further interpretation of the Act; specifically, whether individual states are considered to be a "program or activity" under the Act. Courts have unanimously held that a state entity itself is not a "program or activity" under the Act and, therefore, "'only the department or agency which receives [or distributes] the aid is covered.' . . . The acceptance of funds by one state agency therefore leaves unaffected both other state agencies and the State as a whole." Jim C. v. United States, 235 F.3d 1079, 1081 (8th Cir. 2000) (quoting Klinger v. Dep't of Corrections, 107 F.3d 609, 615 (8th Cir. 1997)); see also Stanley v. Litscher, 213 F.3d 340, 344 (7th Cir. 2000) ("We therefore agree with the fourth, ninth, and eleventh circuits that the Rehabilitation Act is enforceable in federal court against recipients of federal largess."); Koslow, 302 F.3d at 171 ("Under the statutory definitions in the Rehabilitation Act, the state, as a whole, cannot be a 'program or activity.'"); Schroeder, 927 F.2d at 962 (finding that the amendments were not "intended to sweep in the whole state or local government, so that if two little crannies (the personnel and medical departments) of one city agency (the fire department) discriminate, the entire city government is in jeopardy of losing its federal financial

Page 9

assistance."). When a state accepts federal funds offered to a state agency, "the State waives its immunity only with regard to the individual agency that receives them." Jim C., 235 F.3d at 1081; see also Koslow, 302 F.3d at 171 ("[I]f a state accepts federal funds for a specific department or agency, it voluntarily waives sovereign immunity for Rehabilitation Act claims against the department or agency – but only against the department or agency."). While the Eleventh Circuit has not decided the precise issue before the court today, the court is persuaded by the above-cited courts' interpretation of the Rehabilitation Act that state entities as a whole are not liable for violations of the Rehabilitation Act. This interpretation is supported both by statutory interpretation and the history of Eleventh Amendment immunity. First, as a matter of statutory interpretation, the Eighth Circuit notes in Jim C. that subsection (b)(1)(B) of Section 504 of the Rehabilitation Act would be superfluous if an entire state government would be subject to liability under Section 504 whenever any of its subparts receives federal funds. 235 F.3d at 1081, n.3. If states were in fact liable under Section 504, then the entities covered under subsection (b)(1)(B) would already be covered under (b)(1)(A) whenever the entities received or distributed federal funds. Id. (citing Lightbourn v. County of El Paso, Texas, 118 F.3d 421, 427 (5th Cir. 1997), Schroeder, 927 F.3d at 962)).

Interpreting the Rehabilitation Act, as amended, as to constitute a waiver of sovereign immunity only for the agency or department that receives federal funds is also consistent with the history of sovereign immunity. Courts apply "stringent, exacting standards" when determining whether a state waived its Eleventh Amendment immunity to suit. Litman, 186 F.3d at 550. Courts will not find a waiver of state sovereign immunity unless there is an "unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment." Id. (quoting Atascadero, 473 U.S. at 230, n.1). "Thus, when a condition under the Spending Clause includes an unambiguous waiver of Eleventh Amendment immunity, the condition is constitutionally permissible as long as it rests on the state's voluntary and knowing acceptance of it." Litman, 186 F.3d at 555. When a state accepts federal funds on behalf of an agency or department, it is not explicitly waiving its sovereign immunity as applied to the state as a whole, but rather waives immunity for the department or agency that receives the federal funds.

After reviewing all of the cases cited by plaintiff and conducting further inquiry on its own, the court is unable to find a single case where a court allowed a plaintiff to sue a state entity under the Rehabilitation Act. Rather, plaintiffs asserting claims under the Act sue the department or agency and officials within those departments or agencies that they allege committed the

violation. See, e.g., Harris v. Thigpen, 941 F.2d 1495, 1522 (11th Cir. 1991) (finding that the Department of Corrections received federal funds and thus could be held liable under the Rehabilitation Act); Garrett v. Univ. of Ala. at Birmingham Bd. of Trs., 344 F.3d 1288, 1293 (11th Cir. 2003) (finding that state agencies waived their sovereign immunity under the Rehabilitation Act when accepting federal funds); Koslow, 302 F.3d at 172 (finding the Pennsylvania Department of Corrections waived sovereign immunity under the Rehabilitation Act because the Commonwealth of Pennsylvania accepted federal funds on behalf of the department); A.W. v. The Jersey City Public Schools, 341 F.3d 234, 244 (3d Cir. 2003) (finding the state of New Jersey waived immunity of the New Jersey Department of Education when it accepted federal funds on behalf of the agency); Klinger v. Dept. of Corrections, 107 F.3d 609, 615 (8th Cir. 1997) (finding suit proper against Nebraska Department of Corrections because it was the recipient of federal funds).

The cases cited by plaintiff to support his contention that suit against the State of Georgia under the Rehabilitation Act in the present case is proper do not provide examples of plaintiffs suing state entities, but rather are cases where plaintiffs sued state agencies or departments and the officials within these agencies or departments. Many of the cases cited by plaintiff deal with state sovereign immunity where a party brings suit under Ex

Page 12

parte Young for injunctive relief to prevent a continuing violation of federal law.  See Henrietta D. v. Bloomberg, 331 F.3d 261, 285-86 (2d Cir. 2003) (finding state official liable under the Rehabilitation Act in her official capacity for injunctive relief and supervisor liability proper where state accepted funds and city administered the program with the funds); Miller v. Young, 384 F.3d 1248, 1263 (11th Cir. 2004) (finding the plaintiff was entitled to sue a state official in his official capacity for injunctive relief under the Americans with Disabilities Act).  The cases discussing Ex parte Young do not have any bearing on the present case, as plaintiff did not seek injunctive relief against the State of Georgia or Sheriff Langley.  The rest of the cases cited by plaintiff fail to provide the court with any precedent to support a finding that the Rehabilitation Act applies to the State of Georgia in the present case.

The Joint Stipulations submitted by the parties in the present case provides that Carroll County received federal funds, as defined by the Rehabilitation Act, directly from the federal government during the time period at issue.  J.S. ¶ 12.  The stipulations further state that Carroll County did not receive any federal funds, as defined by the Rehabilitation Act, directly from the State of Georgia, or any department or agency of the State during the time period at issue.  J.S. ¶ 13.  Accordingly, the court finds that the State of Georgia is not liable to plaintiff

for Sheriff Langley or his employee's alleged violations of the Rehabilitation Act because the State has not waived its sovereign immunity.   Only the specific department or agency that receives federal funds waives its sovereign immunity for Rehabilitation Act claims, which in this case is Carroll County.

Regardless of the Eleventh Circuit's holding in <u>Manders</u>, plaintiff fails to provide the court with any link between the court's decision in that case and his contention that he can assert a claim under the Rehabilitation Act against the State of Georgia. The plaintiff in <u>Manders</u> asserted claims against the defendants under 28 U.S.C. § 1983 for excessive force.   338 F.3d at 1034. Even if the court were to find that Sheriff Langley in the present case acted as an arm of the State of Georgia, plaintiff fails to provide the court with any authority to support a finding that the State of Georgia waived its Eleventh Amendment immunity with regard to claims under the Rehabilitation Act, especially when plaintiff concedes that Carroll County accepted federal funds directly from the federal government, and not from the State of Georgia or a state agency or department.   Accordingly, and for all the aforementioned reasons, defendant's motion for summary judgment [docket no. 18] is hereby GRANTED.   Plaintiff's motion for summary judgment [docket no. 20] is hereby DENIED.

Summary

1) Defendant's motion for summary judgment [docket no. 18] is **GRANTED;**

2) Plaintiff's motion for summary judgment [docket no. 20] is **DENIED.**

**SO ORDERED,** this _____ day of October, 2006.

G. ERNEST TIDWELL, JUDGE
UNITED STATES DISTRICT JUDGE